RIGGIN
*v.*
KENDIG.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

The State *v.* The Judge of the Fifth District Court—Ex rel. S. M. Perkins.

| 12 | 455 |
| 52 | 105 |
| 12 | 455 |
| 107 | 339 |

Interlocutory orders made in the progress of a cause have their effect without being signed by the Judge.

When in a redhibitory action an interlocutory order was made, authorizing the delivery of the slave into the custody of the defendant, upon the execution of a bond in favor of the plaintiff, it was held that the order was one which was calculated to produce, or which might occasion an irreparable injury, and that an appeal from such an order should be allowed.

ON application for a *mandamus* to the Judge of the Fifth District Court of New Orleans, *Eggleston,* J. *Collins & Wooldridge,* for relator.

MERRICK, C. J. It appears by the answer of the Judge of the Fifth District Court to the rule issued in this case, that "*Perkins* instituted in that court, the 1st of May, 1857, his redhibitory action against *Shelton* to recover the price of a female slave named *Jane,* which the former purchased of the latter on the 5th of March, 1857, and guaranteed against the vices and maladies prescribed by law. In his petition, he charges that the slave was afflicted with a chronic disease of the heart and lungs, and the disease called Tonsils, to such an extent as to render her services useless to him. On the 16th May, 1857, *Ar. Miltenberger,* the agent of *Perkins,* the plaintiff, addressed a letter to *Shelton,*" notifying him that the slave was left with one *Screnes,* in this city, where she was kept at a charge of 40 cents per day ; that the plaintiff looked to him for the return of the price, interest thereon, expenses and damages, and that the slave was at his disposal whenever the same should be refunded.

" The plaintiff, in his petition, demands $500 as damages for medical services, counsel fees and charges. On the 20th of May, 1857, *Shelton* took a rule on *Perkins* to show cause why he should not be allowed to bond said slave, on giving such bond and security as the court might require, for the forthcoming of said slave, suggesting in his rule, ' that since the institution of this suit, the plaintiff has made a tender and consignment of the slave forming the subject matter of this litigation, and that said slave is now in the slave-yard of one *Screnes,* at a heavy expense, and that her health may be injured by her being there confined.' "

The District Judge in his answer further states that "this rule came up for trial, and the facts were duly proved. Several witnesses testified to the danger the slave would incur by remaining in the slave-yard, and the bad condition and structure of the place."

STATE
*v.*
JUDGE 5TH D. C.

The Judge permitted the defendant to bond the slave, but "required a bond with good security in the sum of two thousand dollars, for the forthcoming of the slave, in the event of there being a judgment in favor of *Perkins*."

He further states that three applications were made to him for an appeal from the judgment making the rule absolute, before it was signed, and not considering *Perkins* entitled to an appeal, he declined to allow one.

To establish the correctness of his ruling on the application for an appeal, the Judge submits the following reasons, viz:

"1st. Because it is not an appealable case, at all events, before the judgment is signed.

"2d. Because the life of the slave was put in jeopardy by the act of *Perkins*, in placing her, ill as he charges she was, in an unhealthy place, as it was proved to be on the trial of the rule.

"3d. That *Perkins* had made a real tender and consignment of the slave to *Shelton*, and he had a legal right to take her into his possession to cure her if possible, and to protect himself against loss by the execution of a bond and security in a sum exceeding the principal, interest, damages and costs claimed by *Perkins*."

The second and third of these reasons relate more particularly to the correctness of the decision of the District Judge on the merits of the rule taken before him, than to the question whether the plaintiff is entitled to the appeal prayed for. We will, therefore, consider the first reason assigned.

It is not usual to sign the interlocutory orders made in the progress of a cause, and as they have their effect without the signature of the Judge, the plaintiff was not obliged to wait until the Judge should sign such interlocutory decree before applying for an appeal. See *Van Winckle* v. *Flechaux*, 12 L. R. 150.

As interlocutory orders are always subject to revision on appeal, it is certainly not desirable that the administration of justice should be burdened by a multiplicity of appeals. But it is well settled that where the interlocutory order is calculated to work or may occasion the party an irreparable injury, a direct appeal from such order is allowed the party. The only remaining question then is, whether the order of the Judge, authorizing the delivery of the slave into the custody of the defendant, is one calculated to produce, or which may occasion, an irreparable injury? Aside from the question of the solvency of the parties to the bond, the delivery of the slave to the defendant upon the execution of the bond may have the effect to compel the plaintiff to institute a new action upon the bond after the determination of this suit. It may so change the condition of parties to the present suit, that the final judgment in that case will not end the controversy between *Perkins* and *Shelton*. Orders producing such effects are considered as working irreparable injuries. C. P. 566; *Hyde* v. *Jenkins*, 6 L. R. 435; *Gossett* v. *Cashell*, 14 L. R. 245; *Taylor* v. *Penrose*, 12 L. R. 137; ibid. 148; *Comstock* v. *Paie*, 15 L. R. 481; 2 Rob. 342. As a question of law merely, it seems to us to result from the authorities cited, that the plaintiff is entitled to his appeal.

That appeal will suspend the order of the District Judge, which it is said that humanity requires should be executed. In reply to this argument, we can only say we have not seen the testimony which the District Judge considers so convincing. Should it produce the same conclusions in our minds when it reaches us, the defendant will be fully protected by the appeal bond and the

unfavorable effect which the conduct of the plaintiff will produce upon his cause, and the slave herself by the penal laws made for her protection. Bullard and Curry Dig. 56, sec. 39. STATE *v.* JUDGE 5TH D. C

It is ordered, &c., that the rule be made absolute, and that a peremptory *mandamus* issue in this case, commanding said Judge to make such statements and allow an appeal as prayed for by the applicant in his petition.